Sheila HURDLE, Plaintiff–Appellant,

v.

The BOARD OF EDUCATION OF THE CITY OF NEW YORK and Patricia Romandetto, Superintendent, Community School District 3, individually and in her official capacity, Defendant–Appellee.

No. 03–9011.

United States Court of Appeals, Second Circuit.

Oct. 27, 2004.

424

Rick Ostrove, Leeds, Morelli & Brown, P.C., Carle Place, NY, for Plaintiff–Appellant.

Dona B. Morris, Assistant Corporation Counsel, (Michael A. Cardozo, Corporation Counsel of the City of New York, on the brief, Francis F. Caputo), for Defendant–Appellee, of counsel.

Present: CARDAMONE, MCLAUGHLIN, and WESLEY, Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED** that the judgment of the district court be **AFFIRMED.**

Familiarity by the parties is assumed as to the facts, the procedural context, and the specification of appellate issues. After undertaking review of the district court judgment denying a new trial, we now affirm. Although plaintiff Hurdle failed to state timely and adequately the grounds for her objection to the verdict sheet, thereby waiving any objection under Fed. R.Civ.P. 51, *see Jarvis v. Ford Motor Co.*, 283 F.3d 33, 59–62 (2d Cir.2002), there is an obvious inconsistency between the jury's findings of fact and the judgment entered on behalf of defendants.

The Supreme Court has said that to prevail in an action under 42 U.S.C. § 1983 alleging retaliation for an employee's exercise of her First Amendment rights, a plaintiff must "prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination. If the employee discharges that burden, the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct." *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). In this case, the jury found that Hurdle proved by a preponderance of the evidence that the exercise of her right of free speech was a substantial or motivating factor in Romandetto's decision to transfer her. The jury also found that Romandetto did not prove by a preponderance of the evidence that she would have removed Hurdle and reassigned her regardless of "whether or not she had … exercised her right of free speech." With these two findings, plaintiff overcame the first two hurdles to a finding of liability against both the Board of Education and Romandetto, in her individual capacity.[1]

To determine whether the Board of Education was liable, plaintiffs also had to prove that Romandetto acted pursuant to official municipal policy. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "A school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursu-

---

1. With regard to Romandetto's personal liability, the jury found that it was reasonable for defendant Romandetto to believe that she had not violated plaintiff's right of free speech. Because neither party contests the finding that Romandetto had qualified immunity, we need not address that issue on appeal.

ant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir.2004)(internal citations omitted); *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 497, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Plaintiff's theory in her complaint was that Romandetto was a final policymaker.

■ The Supreme Court has stated that "whether a particular official has final policymaking authority is a question of *state law.*" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (internal citations omitted). "As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). The district court erred in reserving judgment on Romandetto's policymaker status until after the verdict was rendered. Had the district court decided the policymaker issue before the case was submitted to the jury, the inconsistency between the jury's findings and entry of judgment on behalf of the Board of Education would have been patent.

The district court further erred in relying on *Murray v. Bd. of Educ.*, 984 F.Supp. 169, 182 (S.D.N.Y.1997), for the proposition that a community superintendent is a policymaker under New York law. *Murray* does not definitively address whether New York Education Law grants a community superintendent policymaking status with regard to the transfer of school principals. The court in *Murray* noted, without any analysis, that "[the superin-

tendent] *might well have* been a policymaker with regard to plaintiff's involuntary transfer," but the court declined to base its decision on the policymaker issue. *Id.* (emphasis added). The *Murray* court instead concluded that plaintiff had failed to establish "that the Board was the 'moving force' behind either her transfer or her not being promoted." *Id.* Reliance on *Murray* without a careful analysis of state law was misplaced.

■ It is well established in this Circuit that when examining an individual's status as a policymaker under *Monell*, "the official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be 'responsible under state law for making policy *in that area* of the [municipality's] business,'" *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir.2000) (emphasis added in *Jeffes*) (quoting *Praprotnik*, 485 U.S. at 123), or must "have the power to make official policy *on a particular issue,*" *Id.* at 57 (emphasis added in *Jeffes*) (quoting *Jett*, 491 U.S. at 737), or must "possess[ ] final authority to establish municipal policy *with respect to the action ordered.*" *Id.* at 57 (emphasis added in *Jeffes*) (quoting *Pembaur*, 475 U.S. at 481). "Thus, the court must 'ask whether [the] governmental official [is a] final policymaker[ ] for the local government in a particular area, or on [the] particular issue' involved in the action." *Id.* (quoting *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)).

New York Education Law § 2590-j(8) explicitly states that "[t]he community superintendent may transfer members of the teaching and supervisory service without their consent within the district *for the following reasons only:* (a) Disciplinary action pursuant to subdivision seven of this section, (b) Excess staff in a specific school, (c) To staff a new school, or (d) To

fill a vacancy in another school within the district . . . ." (emphasis added). State law thus clearly limits the community superintendent's discretion to transfer principals without their consent. The community superintendent's transfer authority is further circumscribed by § 2590–j(8–a), which notes that "[n]otwithstanding the provisions of subdivision eight of this section, a community superintendent *shall request the chancellor to transfer* a principal pursuant to subdivision twenty-five of section twenty-five hundred ninety-h of this article . . . ."[2] Thus, the superintendent's decisionmaking authority is subservient to the powers of the chancellor in this regard.

Notably, appellants do not contend that Hurdle was transferred for any of the enumerated reasons detailed in § 2590–j(8). Thus, Romandetto's transfer decision concerning Hurdle can hardly be viewed as "final." *See Praprotnik*, 485 U.S. at 127; *see also Hill v. N.Y. City Bd. of Educ.*, 808 F.Supp. 141, 151 (E.D.N.Y.1992) (holding that, where Board of Education and Chancellor "retained the authority to overrule [Director of the Office of Pupil Transportation] on appeal" concerning his decision to fire employees, Director did not have final policymaking authority).

Appellants point to Romandetto's deposition testimony and contend that Romandetto was, in fact, the final decisionmaker with regard to the retaliatory transfer. In our opinion, Romandetto's views of the matter are irrelevant to our state law analysis. Furthermore, even if Romandetto could make the final transfer decision, that authority is not dispositive of her status as a policymaker. In *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241 (5th Cir.199), the superintendent testified that he was the final decisionmaker in instances where an employee objected to a proposed transfer. 7 F.3d at 1248–50. The circuit court nevertheless concluded that delegating the final decision to the superintendent in the cases of contested individual employee transfers did not elevate him to the status of policymaker, much less final policymaker, in that regard. *Id.* at 1246. The *Jett* court carefully noted the Supreme Court's distinction between *decisionmaking* and *policymaking* authority. *Id.*

The Supreme Court in *Pembaur* emphasized that, for the municipality to be liable, the decision must be made by an official with final policymaking authority with respect to the matter decided:

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. (footnote omitted) The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an

---

2. N.Y. Educ. Law § 2590–h(25) (emphasis added). § 2590–h(25) outlines the chancellor's powers and duties with regard to principal transfers. It states, in pertinent part, that the chancellor shall have the power to:

> On the chancellor's own initiative, or at the request of a community superintendent, transfer a principal employed by a community school district pursuant to an agreement with the employee organization representing such principals. The chancellor shall establish a procedure for consulting with affected parents to explain any such transfer. Consistent with section twenty-

five hundred ninety-i of this article, including without limitation subdivision three thereof, and subdivision one thereof with respect to the rights and obligations of a school to which a principal is transferred, in addition to any other law providing for the transfer of principals, the chancellor also may cause the transfer or removal of principals for persistent educational failure, conflicts of interest, and ethics violations, and may require principals to participate in training and other remedial programs to address identified factors affecting student achievement and school performance.

exercise of that discretion. (citation and footnote omitted) The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Pembaur,* 475 U.S. at 481–82. " '[R]esponsibility for making law or setting policy'— the objective under *Praprotnik* of our search through local law—is authority to adopt rules for the conduct of government. Authority to make a final decision need not imply authority to establish rules." *Auriemma v. Rice,* 957 F.2d 397, 401 (7th Cir.1992) (quoting *Praprotnik* at 125). "Any city acts exclusively through agents.... If it were enough to point to the agent whose act was the final one in a particular case, we would have vicarious liability.... That a particular agent is the apex of a bureaucracy makes the decision 'final' but does not forge a link between 'finality' and 'policy.' " *Id.* at 400. Even if Romandetto was the *decisionmaker* with regard to Hurdle's transfer, that does not establish that she had the authority to set the policy authorizing involuntary employee transfers.

In *Jeffes,* we ruled that plaintiff bears the burden of establishing as a matter of law that the conduct of a given official represents official policy. 208 F.3d at 57–58. After careful review of the record, we conclude that Hurdle failed to meet that burden here. Romandetto was not a final policymaker under New York law.

By reversing the district court in its determination that Romandetto was a policymaker, we affirm the judgment on the alternate basis that the Board of Education is not liable under *Monell.* We "therefore need not and do not express any opinion on the soundness of the district court's other bases for its decision." *Port of N.Y. Auth. v. United States,* 451 F.2d 783, 785 (2d Cir.1971).

Accordingly, for the reasons set forth above, the judgment of the district court is hereby **AFFIRMED** and the Board of Education's pending motion is denied.