Teresa **ELDRIDGE, Plaintiff,**

v.

**ROCHESTER CITY SCHOOL DISTRICT, Defendant.**

No. 12–CV–6365L.

United States District Court,
W.D. New York.

Sept. 13, 2013.

Christina A. Agola, Ryan Charles Woodworth, Brighton, NY, for Plaintiff.

Michael E. Davis, Rochester City School District–Department of Law, Rochester, NY, for Defendant.

### DECISION & ORDER

MARIAN W. PAYSON, United States Magistrate Judge.

Plaintiff Teresa Eldridge ("Eldridge") filed this action against the Rochester City School District (the "District") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Docket # 1). Currently pending before this Court is Eldridge's motion for leave to file an amended complaint. (Docket # 17). For the reasons discussed below, Eldridge's motion is granted in part and denied in part.

### FACTUAL BACKGROUND

Eldridge filed this action against the District on July 3, 2012. (Docket # 1). The allegations in the complaint arise out of Eldridge's employment with the District, which commenced in 1999. (Docket # 1 at ¶ 10). According to the complaint, Eldridge's last position with the District was as a teacher at School Without Walls, where Thomas Pappa ("Pappa") was the principal and Eldridge's supervisor. (*Id.* at ¶¶ 11–16). The complaint alleges that Eldridge suffered disparate treatment beginning at the start of the 2011–2012 school year. (*Id.* at ¶¶ 15–17). Eldridge alleges that when she returned to school in September, her name had been removed from her mailbox and she was the only teacher who had not been issued a key to her classroom, while other, younger Caucasian employees were not subject to the same treatment. (*Id.* at ¶ 15). In addition, according to the complaint, Pappa began to send "harassing emails" to Eldridge concerning her non-attendance at team meetings. (*Id.* at ¶ 16). The complaint further alleges that in December 2011, Pappa informed her that another teacher had accused her of harassment, and in February 2012 Pappa informed her that she was being investigated for racial harassment by Patrick Crough ("Crough"), an experienced investigator with the Monroe County Sheriff's Office. (*Id.* at ¶¶ 18–21). According to the complaint, the District's policy required that the harassment complaint be referred to the human resources department. (*Id.* at ¶ 20).

Eldridge's complaint asserts that Pappa threatened Eldridge that they would not be working in the same school together the following year. (*Id.* at ¶ 22). In addition, Pappa told Eldridge that if she would agree to a transfer to another school, the harassment investigation would cease. (*Id.* at ¶ 23). Further, the complaint alleges that on March 2, 2012, during Eldridge's mid-year review, Pappa told her that she would not be returning to the building next year and that the investigation by Crough would continue because she had not accepted Pappa's transfer offer. (*Id.* at ¶¶ 27–28). He also allegedly stated that Eldridge was "not a good fit." (*Id.* at ¶ 30).

On October 5, 2012, the District moved to dismiss the complaint on the grounds that Eldridge failed to state a claim for discrimination or hostile work environment under Title VII. (Docket # 9). That motion is pending before United States District Judge David G. Larimer.

On February 1, 2013, Eldridge filed the pending motion for leave to file an amended complaint. (Docket # 17). According to Eldridge, the purpose of the motion is three-fold. First, Eldridge seeks to add Pappa as a defendant to the action in his individual capacity. (Docket # 17–2 at ¶ 3). Second, Eldridge wishes to add three causes of action: a claim for denial of equal protection against the District and Pappa under 42 U.S.C. § 1983; a *Monell* claim against the District; and, a claim against Pappa for punitive damages. (*Id.*). Finally, Eldridge contends that the motion seeks to correct Crough's title and position. (*Id.*). In the original complaint, Eldridge repeatedly identified Crough as an investigator with the Monroe County Sheriff's Office and alleged that the District improperly threatened and indeed initiated an investigation with the sheriff's office in order to intimidate Eldridge. (Docket # 1 at ¶¶ 19, 20, 24, 25, 35). The proposed amended complaint asserts that Crough is an employee of the District, who was formerly employed as an investigator with the Monroe County Sheriff's Office. (Docket # 17–2 at Ex. D at ¶¶ 23, 24, 28). The proposed amended complaint continues to assert that the harassment investigation should not have been conducted by Crough, but should have been referred to the District's human resources department. (*Id.* at ¶ 24).

Despite Eldridge's characterization of her proposed amendments as described above, the proposed amended complaint actually reflects several additional modifications that are not identified or addressed in Eldridge's moving papers. (Docket # 17–2). First, Eldridge's proposed amended complaint removes all references to "age" or to age discrimination, as well as the reference in the first paragraph to hostile work environment.[1] (Docket # 17–2 at Ex. D at ¶¶ 1, 18, 19, 35, 36). Further, Eldridge's proposed amended complaint modifies and expands the factual allegations in the complaint. For instance, Eldridge's proposed amended complaint includes allegations that she had been involuntarily transferred from her position at School Without Walls. (Docket # 17–2 at Ex. D at ¶¶ 35, 37, 38, 62). In addition, Eldridge asserts that she previously had complained to Pappa and "others" that she believed that she had been discriminated against on the basis of race. (*Id.* at ¶ 21). Finally, the proposed amended complaint adds several factual allegations that appear designed to plead the legal elements necessary to state claims for the three additional causes of action. (*Id.* at ¶¶ 10–12, 37–45).

On February 4, 2013, Eldridge filed a document docketed as a supplemental response in opposition to the motion to dismiss. (Docket # 18). A review of the document suggests that it is intended in part to supplement or amend Eldridge's motion to amend and in part to amend the memorandum of law in opposition to the motion to dismiss. (*Compare* Docket # 18 *with* Docket # 18–1). For instance, the supplemental declaration states that it is made "in support of Plaintiff's Motion to amend her Complaint in this matter." (Docket # 18–1 at ¶ 2). According to her attorney's declaration, the proposed amended complaint attached to Eldridge's motion seeking leave to amend contained

---

**1.** During oral argument, counsel for Eldridge conceded that the essence of her discrimina-tion claim was disparate treatment and not hostile environment.

additional factual inaccuracies. (*Id.*). Specifically, the proposed amended complaint had alleged that Eldridge had been transferred from School Without Walls to a "less desirable school" (*id.;* Docket # 17–2 at Ex. D at ¶¶ 35, 37, 38, 62), when, in fact, Eldridge had not been transferred from the school; this error has been corrected in the supplemental proposed amended complaint. (Docket # 18–1 at Ex. A).[2]

The District opposes the motion to amend on the grounds that it improperly seeks to avoid dismissal of the complaint, that the proposed additional causes of action are futile and that it is unclear whether the causes of action are asserted against the District, Pappa or both. (Docket # 22). The District notes that Eldridge alleges for the first time in the proposed amended complaint that she had complained of discrimination and was retaliated against based upon these complaints. (*Id.* at 3). The District contends that Eldridge has not explained why she failed to plead such facts previously and her failure to do so suggests that her proposed amendments are designed merely to avoid dismissal. As the District emphasizes, not only did her previous iterations of the complaint fail to include such allegations, but so did her EEOC charge (which Eldridge attached in support of her motion (Docket # 17–2 at Ex. A)). (Docket # 22 at 3–4).

With respect to futility, the District argues that Eldridge's proposed Section 1983 claim is futile because she has failed to allege an adverse employment action or that any such "adverse employment action occurred under circumstances giving rise to an inference of discrimination."[3] (*Id.* at 1, 8–9). According to the District, accepting Eldridge's allegations as true, the challenged actions—which include a threatened transfer, an investigation concerning a harassment complaint against her, the removal of a mailbox name, the refusal to issue a key and the transmission of emails about missing team meetings—do not constitute adverse employment actions. (*Id.*). In addition, the District maintains that nothing in the proposed amended complaint suggests that the actions were undertaken on the basis of Eldridge's race. (*Id.*). Thus, the District contends that Eldridge's Section 1983 claim is futile.

In addition, the District contends that the proposed amended complaint also fails to state a claim for municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). (*Id.* at 9–11). According to the District, Eldridge's allegations of a municipal policy or practice are too conclusory to sufficiently state a claim. (*Id.*). Further, the District contends that the *Monell* cause of action is futile because Eldridge has failed to properly plead an underlying constitutional violation. (*Id.*).

The District also contends that Eldridge's proposed amended complaint fails to properly identify which causes of action are asserted against which defendants. According to the District, to the extent Eldridge attempts to assert a Title VII claim against Pappa, such a claim is futile

---

2. For ease of reference, and unless otherwise noted, the term "proposed amended complaint" as used hereafter refers to the document attached as Exhibit A to Docket # 18–1.

3. The District makes a similar futility argument with respect to Eldridge's cause of action asserted under Title VII. (*Id.* at 4–8). With the exception of the correction of certain factual inaccuracies (Docket # 18–1 at Ex. D at ¶ 47) described above, Eldridge's proposed amended complaint does not seek to amend her Title VII cause of action, the viability of which is pending before Judge Larimer. Accordingly, Eldridge's Title VII claim is not before this Court, and this decision does not address that cause of action.

because individuals are not subject to liability under Title VII. (*Id.* at 11). Similarly, the District maintains that to the extent Eldridge attempts to assert a *Monell* cause of action against Pappa in either his individual or official capacity, such efforts are futile because municipal liability cannot be asserted against individuals and such claims against individuals in their official capacities are unnecessary. (*Id.*). The District also contends that any attempt to assert a Section 1983 cause of action against it would be futile for the same reasons asserted in support of its futility arguments with respect to the *Monell* liability cause of action. (*Id.*). Finally, the District contends that a claim for punitive damages is not an independent cause of action and Eldridge's proposed cause of action for punitive damages thus should be denied. (*Id.* at 13).

### DISCUSSION

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that once the time for amending a pleading as of right has expired, a party may request leave of the court to amend, which shall be "freely give[n] ... when justice so requires." Fed.R.Civ.P. 15(a).[4] If the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. *See United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank and Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir.1989). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.— the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■ While the court retains discretion to grant or deny leave to amend under Rule 15(a), "[the] outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.* at 182, 83 S.Ct. 227; *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46 (2d Cir.1983).

■ Despite the ordinarily lenient standard imposed, if the amendment proposed by the moving party is futile, "it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d at 131. The determination whether a proposed amendment is futile is made under the same standard as that used to determine whether a claim would be subject to a motion to dismiss. *See Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119, 123 (E.D.N.Y.2003) (citing *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 160 F.Supp.2d 657, 666 (S.D.N.Y. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). The proposed amended claim must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twom-*

---

4. Because Eldridge seeks to add a new defendant, her proposed amended complaint must also be evaluated under Rule 20(a) of the Federal Rules of Civil Procedure, which governs joinder of additional parties. Fed. R.Civ.P. 20(a). The District does not oppose the addition of Pappa to the action under Rule 20(a), and I find that the addition of Pappa is proper under Rule 20(a).

*bly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rather, it "must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 557, 127 S.Ct. 1955); *Sengillo v. Valeo Elec. Sys., Inc.,* 536 F.Supp.2d 310, 312 (W.D.N.Y. 2008) (applying *Bell Atl. Corp.* standard), *aff'd,* 328 Fed.Appx. 39 (2d Cir.2009).

■ Whether the non-moving party will be prejudiced by such an amendment is especially important in determining a party's motion to amend. According to the Second Circuit, a court must consider "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993) (citations omitted).

■ "One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action." *Krumme v. WestPoint Stevens Inc.,* 143 F.3d 71, 88 (2d Cir.), *cert. denied,* 525 U.S. 1041, 119 S.Ct. 592, 142 L.Ed.2d 534 (1998) (internal quotation omitted). Mere delay, however, unaccompanied by either bad faith or undue prejudice, does not warrant denial of leave to amend. *Block v. First Blood Assocs.,* 988 F.2d at 350 (citing *State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981)).

### A. *Failure to Comply with Local Rules*

■ Rule 15(b) of the Local Rules of Civil Procedure for the Western District of New York, which governs amended pleadings, provides as follows:

> Unless the movant is proceeding *pro se,* the amendment(s) or supplement(s) to the original pleading shall be identified in the proposed pleading through the use of a word processing "red-line" function or other similar markings that are visible in both electronic and paper format.

In this case, although represented by counsel, Eldridge has failed to identify the proposed amendments she seeks to make to her original complaint through the use of a "red-line" function or similar markings. This failure is compounded by Eldridge's failure to identify all of her proposed changes in her motion papers. To make matters worse, Eldridge has filed multiple versions of her proposed amended complaint in an attempt to correct the multiple and repeated factual inaccuracies contained in both her original complaint and her first version of her proposed amended complaint.

Despite counsel's disregard for this district's local rules, and despite the inordinate amount of time expended by this Court comparing and contrasting the various iterations of the complaint in order to identify and attempt to understand the proposed amendments, I will nonetheless evaluate Eldridge's motion on the merits. In doing so, I caution Eldridge's counsel of the responsibility both to consult and to comply with the district's local rules.

### B. *Delay, Bad Faith and Undue Prejudice*

■ Although the District does not use the term "bad faith," it essentially opposes Eldridge's motion to amend on the grounds that Eldridge is deliberately asserting baseless facts and futile legal theories in an attempt to avoid dismissal of the

complaint in its entirety (through the District's pending motion to dismiss). Such allegations, if true, would constitute bad faith and would justify denial of the motion to amend. *See Powell v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.,* 2013 WL 3956377, *4 (S.D.N.Y.2013). According to the District, Eldridge's allegations that she previously complained of discrimination are baseless, as evidenced by both the affidavit of Pappa who denies that she ever complained (Docket # 22–1) and the absence of such allegations in Eldridge's EEOC charge. (Docket # 17–2 at Ex. A). At this stage of the litigation, however, the Court must consider only the allegations in the pleadings and accept them as true.

The District argues that the Court has the discretion to "pierce the veil of the complaint's factual allegations" at this stage of the litigation because Eldridge has alleged contradictory and inconsistent facts in her previous iterations of the amended complaint. (Docket # 22 at 7–8). The cases relied upon by the District, however, were decided at the summary judgment stage of the litigation, after discovery had been completed and a full factual record had been developed. *See Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 106 (2d Cir.2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 1744, 182 L.Ed.2d 530 (2012); *Arrington v. United States,* 473 F.3d 329, 344 (D.C.Cir.2006) (concurring in part and dissenting in part). Despite the repeated inaccuracies and corrections contained in the multiple versions of the complaint, I cannot conclude at this stage of the litigation that Eldridge's allegations are wholly implausible. Accordingly, the Court must accept Eldridge's proposed factual allegations as true and cannot conclude on this record that Eldridge's proposed amended complaint is submitted in a bad faith attempt to avoid dismissal of otherwise baseless claims. Of course, in the event that the claims and factual allegations are proven to be wholly baseless, defendants may seek any relief, including sanctions, they believe is warranted.

In the absence of bad faith, there is nothing in this record to suggest that the District would suffer undue delay or prejudice if Eldridge is permitted to amend her complaint. The action was commenced approximately one year ago, and the District promptly moved to dismiss within three months of commencement of the action. Given the pending motion to dismiss, a Rule 16 conference has not been conducted and this Court has not issued a scheduling order setting discovery or other deadlines. Thus, I find that there would be no undue prejudice or delay if the amendments were permitted. Accordingly, the District has not demonstrated that Eldridge's motion to amend should be denied on the grounds of bad faith, undue prejudice or undue delay.

## C. *Section 1983 Claims against Pappa*

Eldridge's proposed amended complaint seeks to add a Section 1983 claim asserting that defendants violated her right to equal protection guaranteed by the Fourteenth Amendment. (Docket # 18–1 at Ex. A). The allegations relating to the proposed cause of action involve claims of both disparate treatment and retaliatory conduct. For instance, some of the allegations contend that Eldridge was subjected to "disparate treatment based on race," while others assert that Pappa's actions were motivated by Eldridge's "good faith complaints about ... Pappa." (*Id.* at ¶¶ 61, 62). Accordingly, I interpret Eldridge's Section 1983 claims as attempting to assert claims for both discrimination and retaliation.

To establish a claim under Section 1983, a plaintiff must demonstrate

that the challenged conduct (1) was "committed by a person acting under color of state law"; and (2) "deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994). Section 1983 creates no substantive rights; instead, it provides a "procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir.1999).

■ Eldridge alleges that Pappa and the District violated her right to Equal Protection guaranteed by the Fourteenth Amendment by discriminating against her on the basis of her race and by retaliating against her for complaining about the alleged disparate treatment. Claims of employment discrimination and retaliation under Section 1983 are analyzed under the same standards as claims for discrimination and retaliation under Title VII. *See Men of Color Helping All Soc'y, Inc. v. City of Buffalo*, 529 Fed.Appx. 20, 26, 2013 WL 3285208, *3 (2d Cir.2013) (summary order) ("[r]ace discrimination claims under Title VII, NYHRL, and §§ 1981 and 1983 are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)"); *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir.2006) ("[o]nce action under color of state law is established, the analysis for [Section 1983] claims is similar to that used for employment discrimination claims brought under Title VII"); *Fernandez v. City of New York*, 2012 WL 2402642, *4 (S.D.N.Y.2012) (claims for retaliation under Sections 1981 and 1983 are analyzed under the *McDonnell Douglas* framework); *Cortes v. City of New York*, 700 F.Supp.2d 474, 488 (S.D.N.Y.2010) ("[e]mployment discrimination claims under Section 1983 that seek to vindicate a plaintiff's Fourteenth Amendment right to equal protection under the

laws are measured against the same standard as are [p]laintiff's Title VII … race discrimination claims"); *Jeter v. New York City Dep't of Educ.*, 549 F.Supp.2d 295, 306 (E.D.N.Y.2008) (claims of discrimination and retaliation under Section 1983 based on equal protection rights are analyzed under the same analytical framework as a Title VII claim).

Defendants have not asserted that their actions were not taken under color of state law. Instead, they argue that Eldridge's proposed Section 1983 claims are futile because she has failed to allege an adverse employment action and, even if she has, she has failed to allege facts to suggest that any such adverse action occurred under circumstances giving rise to an inference of race discrimination. (Docket # 22 at 8–9). Different standards for alleging adverse employment action apply to discrimination and retaliation claims. *See Cunningham v. New York State Dep't of Labor*, 326 Fed.Appx. 617, 620 (2d Cir. 2009) (summary order); *Taylor v. New York City Dep't of Educ.*, 2012 WL 5989874, *9 (E.D.N.Y.2012) ("standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims under Title VII") (internal quotation omitted). Accordingly, I will address each claim separately.

### 1. *Section 1983 Discrimination Claim*

■ A prima facie case of race discrimination requires a plaintiff to demonstrate the following elements: "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.2003); *see Jeter v. New York City Dep't of Educ.*, 549

F.Supp.2d at 306 (describing prima facie claim for discrimination under Section 1983). "[A] plaintiff need not plead all the facts necessary to establish a prima facie case, but must satisfy Fed.R.Civ.P. 8 by making 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Taylor v. New York City Dep't of Educ.*, 2012 WL 5989874 at *6 (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. at 511, 122 S.Ct. 992). Thus, at the pleading stage, although the plaintiff is not required "to plead the elements of a prima facie case, the complaint must still nudge plaintiff's claims across the line from conceivable to plausible." *Fernandez v. City of New York*, 2012 WL 2402642 at *4 (quoting *Flores v. New York City Human Res. Admin.*, 2011 WL 3611340, *7 (S.D.N.Y. 2011)).

■ An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir.2004) (internal quotation omitted). "To be 'materially adverse[,] a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F.Supp.2d 460, 467 (S.D.N.Y.2013) (quoting *Das v. Consol. Sch. Dist. of New Britain*, 369 Fed.Appx. 186, 189 (2d Cir. 2010) (summary order)). Accordingly, "[a]ctions that cause a plaintiff 'embarrassment or anxiety' are insufficient to qualify as an adverse action because 'such intangible consequences are not materially adverse alterations of employment conditions.'" *Miksic v. TD Ameritrade Holding Corp.*, 2013 WL 1803956, *3 (S.D.N.Y.2013) (quoting *Castro v. New York City Bd. of Educ. Pers.*, 1998 WL 108004, *7 (S.D.N.Y.1998)). Whether a particular action is materially adverse

must be determined on a case-by-case basis. *Hill v. Rayboy–Brauestein*, 467 F.Supp.2d 336, 351 (S.D.N.Y.2006).

■ To be materially adverse, the action must have negative consequences, such as "a demotion, a reduction of wages, a loss of benefits [or] a significant loss of material responsibilities." *See id.; see also Miksic v. TD Ameritrade Holding Corp.*, 2013 WL 1803956 at *3 ("[t]ypical adverse employment actions may include termination from a job, decrease in salary, material reduction in benefits or responsibilities, or a less distinguished title") (citing *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000)). By contrast, a negative employment evaluation, without more, is insufficient to constitute an adverse employment action. *See Regis v. Metro. Jewish Geriatric Ctr.*, 2000 WL 264336, *8 (E.D.N.Y.2000) ("disciplinary memoranda and evaluations are adverse employment actions only if they affect ultimate employment decisions such as promotion, wages, or termination"). Similarly, "reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." *Lyman v. NYS OASAS*, 928 F.Supp.2d 509, 520 (N.D.N.Y.2013) (quoting *Abraham v. Potter*, 494 F.Supp.2d 141, 147–48 (D.Conn.2007)).

■ Reviewing the allegations contained in the proposed amended complaint, I conclude that Eldridge has failed to state a claim for discrimination under Section 1983 because she has failed to allege that she suffered an adverse employment action. Reading the complaint liberally, Eldridge alleges the following adverse employment actions: (1) she was not issued a key and her name had been removed from her mailbox at the beginning of the 2011–2012 school year (Docket # 18–1 at ¶ 19);

(2) Pappa sent her "harassing" emails concerning her non-attendance at team meetings (*id.* at ¶ 20); (3) the defendants failed to investigate Eldridge's claims of racial discrimination (*id.* at ¶¶ 22, 36); (4) Pappa intimidated and harassed Eldridge by initiating an internal investigation of complaints against Eldridge conducted by Crough, rather than the human resources department (*id.* at ¶¶ 22–24); and, (5) Pappa leveraged the investigation to pressure Eldridge to accept a voluntary transfer and threatened to transfer her to a "less desirable" school (*id.* at ¶¶ 26–28, 31, 38). While such allegations may have caused Eldridge anxiety or stress, they are nonetheless insufficient to qualify as an adverse employment action because Eldridge has failed to allege that she experienced any tangible adverse consequence as a result of any of the actions. *See Miksic*, 2013 WL 1803956 at *3.

Defendants' failure to issue Eldridge a key and the removal of her name from her mailbox are insufficient to allege an adverse employment action, particularly in the absence of any allegations that the lack of a key or a mailbox name interfered with Eldridge's ability to perform her job responsibilities. *See Hill v. Rayboy–Brauestein*, 467 F.Supp.2d at 354 ("as a matter of law, the failure to promptly provide a replacement key did not cause a materially adverse change to [p]laintiff's employment, particularly where the absence of a key did not prevent her from working"). Similarly, allegations that Pappa sent Eldridge emails regarding her failure to attend team meetings, without any allegation that Eldridge suffered an adverse consequence as a result of the emails, is insufficient to qualify as an adverse employment action. *See Costello v. New York State Nurses Assoc.*, 783 F.Supp.2d 656, 677–78 (S.D.N.Y.2011) (employer's actions, including "inundating [plaintiff] with emails and questions regarding her work performance," did not constitute an adverse employment action in the absence of allegations that plaintiff suffered "demotion, material loss of benefits or significantly diminished material responsibilities"); *Admassu v. Fox/Lorber Assocs., Inc.*, 2003 WL 22290226, *5 (S.D.N.Y.2003) ("harassing" emails critical of plaintiff's work performance, while perhaps causing "plaintiff some embarrassment or anxiety" did not constitute adverse employment action where they did not "materially alter [plaintiff's] employment conditions"). Finally, the District's alleged failure to investigate Eldridge's complaint of discrimination against Pappa does not constitute an adverse employment action. *See Milne v. Navigant Consulting*, 2010 WL 4456853, *8 (S.D.N.Y. 2010) ("failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint") (quoting *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir.2010)).

Nor do Eldridge's allegations concerning the internal investigation and the threat of a transfer constitute materially adverse employment actions because neither materially altered her conditions of employment. Under certain circumstances, a transfer in employment may constitute an adverse employment action, but only if it results in a "materially significant disadvantage." *See Galabya v. New York City Bd. of Educ.*, 202 F.3d at 641 (quoting *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994)). Thus, a transfer which does not include a loss of salary or benefits, or some other "setback to the plaintiff's career," does not constitute an adverse employment action. *Id.* at 641 (transfer was not an adverse employment action where it did not involve "an assignment that was materially less presti-

gious, materially less suited to [plaintiff's] skills and expertise, or materially less conducive to career advancement"). In the present case, Eldridge has not alleged that the proposed transfer would have resulted in any diminished employment benefits or would have materially altered her employment responsibilities. At best, she has alleged that the transfer would have been to a "less desirable school"—which is insufficient to allege an adverse employment action. Moreover, Eldridge was not actually transferred; her proposed amended complaint alleges only that she was pressured to transfer or threatened with a transfer—allegations that are similarly insufficient to qualify as an adverse employment action. *See Alexander v. Westbury Union Free Sch. Dist.*, 829 F.Supp.2d 89, 109 (E.D.N.Y.2011) ("the mere threat of a transfer is not enough, and, even if it were, many courts have found that a lateral transfer without loss of salary or benefits does not support a [discrimination] claim"); *Ifill v. United Parcel Serv.*, 2005 WL 736151, *5 (S.D.N.Y.2005) (plaintiff failed to state a claim for discrimination where he alleged that defendant pressured her to involuntarily transfer to another group); *see Early v. Wyeth Pharm., Inc.*, 603 F.Supp.2d 556, 574 (2009) ("[a] threat is not, by itself, an adverse employment action").

Eldridge's allegations that she was subjected to an "intimidating" investigation led by Crough, without any allegation that the investigation resulted in a material change to her employment, likewise does not sufficiently allege an adverse employment allegation. *See Trachtenberg v. Dep't of Educ. of City of New York*, 937 F.Supp.2d at 467 (plaintiff's allegations that defendant intimidated her and sub-

jected her to "microscopic scrutiny" did not constitute an adverse employment action where plaintiff failed to "allege that any negative consequences flowed from" the conduct); *Economou v. Caldera*, 2000 WL 1844773, *21 (S.D.N.Y.2000) ("[c]ourts within this Circuit have held that investigations alone are not adverse employment actions") (collecting cases). Although Eldridge alleges that Pappa improperly intimidated her by appointing Crough to investigate charges of racial discrimination made against Eldridge by another employee, Eldridge does not allege that the investigation resulted in any negative consequences. Accordingly, Eldridge has failed to allege that she suffered any adverse employment action, and her proposed discrimination claim under Section 1983 is futile.[5]

## 2. *Section 1983 Retaliation Claim*

A plaintiff "can maintain a retaliation claim ... even where there is no plausible discrimination claim." *Anand v. New York State Dep't of Taxation & Fin.*, 2013 WL 3874425, *8 (E.D.N.Y.2013). To make out a prima facie case of retaliation, a plaintiff must establish: "(1) that [ ] he engaged in protected participation or opposition ... (2) that the employer was aware of this activity, (3) that the employer took adverse action against plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir.2006) (internal quotation omitted) (alteration in original); *see Fernandez*, 2012 WL 2402642 at *4 (describing prima facie claim for retaliation under Section

---

**5.** I do not reach the issue whether Eldridge has sufficiently alleged circumstances giving

rise to an inference of race discrimination.

1983). At the pleading stage, a plaintiff "need not establish a prima facie case of discrimination, but must nonetheless allege evidence stating a plausible claim of retaliation." *Kretzmon v. Erie Cnty.*, 2013 WL 636545, *4 (W.D.N.Y.2013) (internal quotation and citation omitted).

"[T]he standard for an adverse employment act in the retaliation context is lower than the standard for a disparate treatment claim as, for a retaliation claim, a plaintiff need only show that the action would have dissuaded a reasonable worker from speaking out against discrimination." *Early v. Wyeth Pharm., Inc.*, 603 F.Supp.2d at 577; *see Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir.2010) ("[p]rior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment . . . no longer represent the state of the law") (internal citations omitted). Thus, "[w]hile a discrimination claim must demonstrate adverse actions affecting the terms and conditions of employment, a retaliation claim may be based on employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and employers." *Taylor v. New York City Dep't of Educ.*, 2012 WL 5989874 at *9 (internal quotation omitted).

The standard applied to assess whether an action would dissuade an employee from engaging in protected activity is an objective one and does not encompass a plaintiff's "unusual subjective feeling." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68–69, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). While "[p]etty slights or minor annoyances that often take place at work and that all employees experience do not constitute actionable retaliation[,] . . . in determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines*, 593 F.3d at 165 (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir.2006), *cert. denied*, 549 U.S. 1342, 127 S.Ct. 2062, 167 L.Ed.2d 769 (2007)). Thus, the context in which a retaliation claim arises is relevant because it "can diminish as well as enlarge material effect." *Id.*

A careful review of the proposed amended complaint leads me to conclude that Eldridge has sufficiently alleged conduct which, when viewed in the aggregate, could be considered adverse employment action taken in retaliation for her alleged internal complaints. Eldridge alleges that after she complained about Pappa's racial discrimination, she became the subject of an internal investigation into whether she had subjected another employee to racial harassment. In addition, Eldridge contends that Pappa pressured her to transfer to another school by promising to end the investigation if she agreed and that Pappa subsequently threatened that she would not be working at the same school the following year and that she was not "a good fit." I conclude that the pressure of an internal investigation, coupled with a veiled threat of an involuntary transfer, could dissuade a reasonable employee from engaging in protected activity, and thus adequately alleges an adverse employment action for the purposes of the Section 1983 retaliation claim. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 700 (2d Cir.2012) (employer's threat of termination sufficient to allege adverse employment action); *Tournois v. Waterloo Premium Outlet/Simon Prop. Grp., Inc.*, 2013 WL 3936465, *5 (W.D.N.Y.2013) (allegations that after internal complaint employee was "treated differently from other employees, verbally

abused by a supervisor, and subjected to unwanted scrutiny of his vehicle [sufficient to state claim because conduct] might have dissuaded a reasonable worker from making or supporting a charge of discrimination"); *James v. Countrywide Fin. Corp.*, 2012 WL 6923758, *6 (E.D.N.Y. 2012) (allegations that plaintiff was placed on performance improvement plan shortly after complaining of discrimination sufficient to allege an adverse employment action; "threat of job termination from being placed on [performance improvement plan] could dissuade a reasonable worker from making or supporting a. charge of discrimination") (internal quotation omitted); *Jackson v. N.Y.S. Dep't of Labor*, 2012 WL 843631, *6 (S.D.N.Y.2012) (allegations that plaintiff was disciplined on "bogus charges" and humiliated after making internal discrimination complaint sufficient to allege adverse employment action); *Mariano v. Town of Orchard Park*, 2011 WL 5979261, *4 (W.D.N.Y. 2011) ("threats of retaliation are actionable"); *Fordham v. Islip Union Free Sch. Dist.*, 662 F.Supp.2d 261, 273–74 (E.D.N.Y.2009) (allegations that principal commenced investigation into allegations of child abuse sufficient to allege adverse employment action because "an allegation of child abuse against a teacher, even if false, ... might well dissuade a teacher from making or supporting a charge of discrimination").

Although Eldridge has failed to allege when she made her internal complaints of race discrimination, a fair reading of her complaint suggests that her complaints were made after she began the 2011–2012 school year and before she was informed of the investigation against her in December 2011. (Docket # 18–1 at ¶¶ 19–22). Taking Eldridge's allegations as true, the

challenged events all occurred within a period of approximately three months. At this stage of the litigation, I find that Eldridge's allegations are sufficient to support an inference that the investigation and threats of transfer were undertaken in retaliation for Eldridge's complaints. *See Giscombe v. New York City Dep't of Educ.*, 2013 WL 829127, *6 (S.D.N.Y.2013) ("the fact that [d]efendant's allegedly retaliatory actions came within two months of [p]laintiff's [protected activity] is sufficient at the pleading stage to support an inference of causality") (citing *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir.2000) ("proof of causation can be shown ... indirectly, by showing that the protected activity was followed closely by discriminatory treatment")). Thus, I conclude that Eldridge should be permitted to amend her complaint to state a cause of action for retaliation against Pappa under Section 1983.

### D. *Municipal Liability Claims Against the District*

The Section 1983 claim asserted in the proposed amended complaint is asserted against "all named defendants." (Docket # 18–1 at 13). In addition, the proposed third cause of action seeks to assert a claim for *"Monell Liability"* against the District. (*Id.* at 15). Whether styled as a Section 1983 claim or a *Monell* claim, each claim seeks to hold the District liable for the alleged constitutional violation of Eldridge's right to equal protection. The District contends that, regardless of how they are styled, both proposed claims are futile because Eldridge has failed to sufficiently allege that the violations occurred pursuant to an official District policy or custom.[6] (Docket # 22 at 10–11, 12).

---

**6.** The District also contends that Eldridge has failed to adequately plead a violation of her

constitutional rights and any *Monell* liability based upon a violation of Eldridge's rights is

■ A municipality may not be held liable under Section 1983 unless the plaintiff's rights were violated by actions taken pursuant to an official policy or custom sanctioned by the municipality. *Missel v. Cnty. of Monroe,* 351 Fed.Appx. 543, 545 (2d Cir.2009) (citing *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. at 691, 98 S.Ct. 2018). A municipal policy or custom may be pled through facts alleging:

(1) a formal policy, promulgated or adopted by the entity; or,

(2) that an official with policy making authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials that was so permanent or well settled as to constitute a 'custom or usage' and that the practices was so widespread as to imply the constructive acquiescence of policymaking officials. *Bektic–Marrero v. Goldberg,* 850 F.Supp.2d 418, 430 (S.D.N.Y.2012) (internal quotation omitted).

■ Thus, a municipality may be held liable under Section 1983 for a decision of an official if that official "has final authority over significant matters involving the exercise of discretion." *Rookard v. Health & Hosps. Corp.,* 710 F.2d 41, 45 (2d Cir. 1983). "An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Id.; see Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.) ("[o]nly those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability") (internal quotation omitted), *cert. denied,* 531 U.S. 813, 121 S.Ct. 47, 148 L.Ed.2d 16 (2000). Whether the official in question possessed final policymaking authority is a legal question to be resolved as a matter of state law. *Jeffes v. Barnes,* 208 F.3d at 57.

■ An official may be a final policymaker as to some issues but not as to others. *See id.* ("the official in question need not be a municipal policymaker for all purposes"). Thus, a public school principal may be a final policymaker where the "harm that befell the plaintiff was under the principal's control." *Zambrano–Lamhaouhi v. New York City Bd. of Educ.,* 866 F.Supp.2d 147, 175 (E.D.N.Y.2011) (collecting cases). Where the final authority for a particular matter is not within the principal's control or is subject to review by another official or entity, the principal is not the final policymaker with respect to that matter. *See Dressler v. New York City Dep't of Educ.,* 2012 WL 1038600, *17–18 (S.D.N.Y.2012). Accordingly, whether a principal is a final policymaker will depend upon state law and the particular facts of the case.[7]

therefore necessarily futile. (Docket # 22 at 10–11, 12). I have already concluded that Eldridge has adequately pled a retaliation claim against Pappa. Thus, the only remaining question is whether Eldridge has adequately pled a basis upon which to hold the District liable for Pappa's alleged retaliatory conduct.

7. Some cases may be read to suggest that a split of authority exists within this Circuit concerning the issue of whether a principal constitutes a final policymaker for the purposes of alleging municipal liability against a school district. *See Rekowicz ex rel. Congemi v. Sachem Cent. Sch. Dist.,* 2012 WL 4172732, *6 & n. 11 (E.D.N.Y.) ("[c]ourts within this circuit have disagreed on whether a school principal is considered a final policymaker for *Monell* purposes"), *report and recommendation adopted,* 2012 WL 4172487 (E.D.N.Y. 2012); *Dressler v. New York City Dep't of Educ.,* 2012 WL 1038600 at *18 ("[o]ther district court decisions in this Circuit have disagreed on whether a principal is a final policymaker"). A review of the case law within this Circuit suggests that the varying outcomes may be explained both by the particular facts of each case, including the specif-

I conclude that Eldridge has adequately alleged a *Monell* claim against the District under the theory that Pappa was the final policymaker. The proposed amended complaint asserts that Pappa "is a high ranking supervisor with control and authority over the Plaintiff in his [sic] terms and conditions of employment" and that Pappa "had the authority to subject Plaintiff to an intimidating investigation and to threaten to involuntarily transfer Plaintiff to a less desirable school." (Docket # 18–1 at Ex. A at ¶¶ 9, 38). Such allegations are sufficient at the pleading stage to permit Eldridge to state a municipal liability claim against the District under Section 1983. *See Giscombe v. New York City Dep't of Educ.*, 2013 WL 829127 at *7 (allegations that the school chancellor announced an investigation of plaintiff and that the principal filed disciplinary charges were sufficient to state a claim for municipal liability).

### E. *Title VII and Municipal Liability Against Pappa*

To the extent that Eldridge's proposed amended complaint may be interpreted as seeking leave to assert claims against Pappa under Title VII (Count I) or for municipal liability (Count III), I agree with the District that such claims would be futile. Individuals are not subject to liability under Title VII. *Kretzmon v. Erie Cnty.*, 2013 WL 636545 at *4 ("[i]ndividuals are not subject to liability under Title VII"). Further, any claim against Pappa in his official capacity would be duplicative of the municipal liability claim, and thus subject to dismissal. *Rekowicz ex rel. Congemi v. Sachem Cent. Sch. Dist.*, 2012 WL 4172732 at *7 ("to the extent that the proposed individual defendants are being sued in their official capacities pursuant to Section 1983, such claims are duplicative of the claims against the District and leave to amend should be denied as futile"). Accordingly, to the extent Eldridge seeks leave to amend her complaint to assert such claims against Pappa, that request is denied.

### F. *Punitive Damages Claim*

I agree with the District that punitive damages are a remedy and not a separate cause of action. *See Rimkus v. Islamic Rep. of Iran*, 750 F.Supp.2d 163, 175 (D.D.C.2010) ("punitive damages is not an independent cause of action[;] . . . [r]ather, a plaintiff must set forth an independent claim . . . for which punitive damages may be an appropriate *remedy*") (internal quotation and citation omitted); *Phillips v. DeAngelis*, 571 F.Supp.2d 347, 350 n. 1 (N.D.N.Y.2008) ("plaintiffs' request for punitive damages is a form of

ic decision or conduct at issue, and the particular type of school involved, as New York law provides for differing degrees of decision-making authority at varying levels for different types of schools. *See, e.g., Hurdle v. Bd. of Ed. of the City of New York*, 113 Fed.Appx. 423, 425–26 (2d Cir.2004) (summary order) (superintendent who made decision to transfer plaintiff was not "final" policymaker because New York Education law § 2590–j(8), applicable only to schools within the city school district of the City of New York, limited the superintendent's authority to transfer), *cert. denied*, 544 U.S. 921, 125 S.Ct. 1646, 161 L.Ed.2d 479 (2005); *Meadows v. Lesh*, 2011 WL 4744914, *4 (W.D.N.Y.2011) (recognizing

case law supporting conclusion that a principal of a public school might have final policy-making authority, but concluding that allegations that defendant was the principal of a charter school were insufficient to allege municipal liability because New York Education Law § 2853(f), applicable to charter schools, provides that the board trustees possess final policymaking authority unless it is otherwise delegated); *Shapiro v. New York City Dep't of Educ.*, 561 F.Supp.2d 413, 420–21 (S.D.N.Y. 2008) (holding that under New York law, New York City school principals do not have final policy making authority over employment decisions concerning teachers in their schools).

relief sought, not a separate cause of action"), *aff'd,* 331 Fed.Appx. 894 (2009). Accordingly, to the extent Eldridge's motion seeks leave to assert a separate cause of action for punitive damages, that request is denied. To the extent that Eldridge is requesting leave to amend the complaint to seek punitive damages as a remedy against Pappa for retaliation under Section 1983, such request is granted. *See New Windsor Volunteer Ambulance Corps, Inc. v. Meyers,* 442 F.3d 101, 122 (2d Cir.2006) ("[a]lthough a municipality itself is immune from a claim for punitive damages, ... that immunity does not extend to a municipal official sued in his individual capacity"); *Villela v. City of Phila.,* 1995 WL 295318, *5 (E.D.Pa.1995) (treating separate cause of action for punitive damages as merely a request for punitive damages under Section 1983 claim).

## CONCLUSION

For the reasons discussed above, Eldridge's motion to amend (**Docket # 17**) is **GRANTED in part and DENIED in part.** Within thirty (30) days of the date of this decision, plaintiff shall file and serve the Amended Complaint.

**IT IS SO ORDERED.**